UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JUDY RIDGLEY, | ) | CASE NO. 4:17CV542 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| NANCY A. BERRYHILL[1], ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| Defendant. | ) ) | |

Plaintiff Judy Ridgley ("Plaintiff") requests judicial review of the decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on July 30, 2017, Plaintiff asserts that the administrative law judge ("ALJ") violated the treating physician rule and erred when assigning considerable weight to the opinions of the reviewing physicians. ECF Dkt. #14. Defendant filed a response brief on September 28, 2017. ECF Dkt. #16. Plaintiff did not file a reply brief.

For the following reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

## I.  **FACTUAL AND PROCEDURAL HISTORY**

Plaintiff filed an application for DIB alleging a disability onset date of March 17, 2010. ECF Dkt. #10 ("Tr.") at 214.[2] The claim was denied initially and upon reconsideration. *Id.* at 148, 157. Plaintiff then requested a hearing before an ALJ, which was held on July 9, 2015. *Id.* at 55. At the hearing, Plaintiff amended her alleged onset date to November 21, 2012, due to the prior hearing

---

[1] On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

[2] All citations to the Transcript refer to the page numbers assigned when the Transcript was filed in the CM/ECF system rather than the page numbers assigned when the Transcript was compiled. This allows the Court and the parties to easily reference the Transcript as the page numbers of the .PDF file containing the Transcript correspond to the page numbers assigned when the Transcript was filed in the CM/ECF system.

decision dated July 17, 2012, and the commencement of further treatment for her left shoulder. *Id.* at 59. On December 15, 2015, the ALJ issued a decision concluding that Plaintiff was not disabled. *Id.* at 27. Subsequently, the Appeals Council denied Plaintiff's request for review. *Id.* at 1. Accordingly, the decision issued by the ALJ on December 15, 2015, stands as the final decision.

The instant suit was filed by Plaintiff on March 16, 2017. ECF Dkt. #1. Plaintiff filed a brief on the merits on July 30, 2017. ECF Dkt. #14. Defendant filed a response brief on September 28, 2017. ECF Dkt. #16. Plaintiff did not file a reply brief.

## II. SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION

On December 15, 2015, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 27. The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 20, 2016.[3] *Id.* at 32. Continuing, the ALJ stated that Plaintiff had not engaged in substantial gainful activity since November 21, 2012, the alleged onset date. *Id.* The ALJ then determined that Plaintiff had the following severe impairments: obesity; fracture of the T7-T12 vertebral bodies, with unspecified spinal cord injury and burst fracture of the L1 vertebral body, status-post surgical fusion of the T11 through L3 vertebral bodies; lumbar disc disease; lumbar strain; left trapezius strain and tendinitis; acromioclavicular osteoarthritis of the left shoulder and left shoulder degenerative disc disease with impingement syndrome; borderline intellectual function; depressive disorder, not otherwise specified; and anxiety disorder, not otherwise specified. *Id.* at 33.

Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 34. Considering the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b), with the following additional limitations: occasionally balance, stoop, kneel, crawl,

---

[3]The ALJ also noted at each numbered finding whether the finding departed from the previous decision. Tr. at 32-46. Plaintiff does not specifically take issue with how the ALJ's decision differs from the previous decision, but rather argues that the ALJ violated the treating physician rule and assigned improper weight to the decision of the reviewing physicians. *See* ECF Dkt. #14 at 13-21.

and climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently reach above shoulder level with the left upper extremity; avoid all exposure to workplace hazards, including unprotected heights and dangerous moving machinery; simple, routine, repetitive tasks that could be learned in thirty days or less, undertaken in a work environment that was relatively static and involving only occasional workplace changes that were explained in advance in a setting that was low stress, defined as precluding high production quotas, and without strict time requirements, arbitration, negotiation, confrontation, directing the work of others, or being responsible for the safety of others; and no more than occasional and superficial interaction with coworkers and the public. *Id.* at 36-37.

Regarding Plaintiff's daily activities, the ALJ stated that she: engaged in child-rearing activities and other activities with her children, including attendance at sporting events and amusement parks; attended the household pets and walked her dog; attended to her hygiene and grooming, with some assistance; prepared simple meals; managed her own finances and medications; read magazines; attended church; functioned throughout her day and was able to keep up with household responsibilities with rest breaks; used a computer; maintained an email account; and watched television for pleasure. Tr. at 41. The ALJ also noted that Plaintiff had a preoccupation with obtaining disability benefits and reported in engaging in psychiatric treatment solely in aid of her disability claim. *Id.*

Continuing, the ALJ found that Plaintiff was unable to perform any past relevant work, was a younger individual on the alleged disability onset date, had a high school education, and was able to communicate in English. Tr. at 45. The ALJ determined that the transferability of job skills was not an issue because Plaintiff's past relevant work was unskilled. *Id.* Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs existed in significant numbers in the national economy that Plaintiff could perform. *Id.* For these reasons, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 21, 2012, through the date of the decision. *Id.* at 46.

### III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir.

2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (internal citations omitted).

## V. LAW AND ANALYSIS

### A. Treating Physician Rule

Plaintiff asserts that the ALJ violated the treating physician rule when weighing the opinions of her treating physician, Hyo H. Kim, M.D., and treating psychiatrist Melvin J. Chavinson, M.D. ECF Dkt. #14 at 13-19. An ALJ must give controlling weight to the opinion of a treating source if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). If an ALJ decides to discount or reject a treating physician's opinion, he or she must provide "good reasons" for doing so. Social Security Rule ("SSR") 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he or she rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even

-5-

where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he or she considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

Specifically, Plaintiff states that Dr. Kim's findings that her persistent pain limited her ability to perform work activities and would necessitate a sit/stand option, extra breaks, and time off task/absenteeism were in direct conflict with the ALJ's determination that Plaintiff could perform a range of light work.[4] ECF Dkt. #14 at 14. Continuing, Plaintiff claims that the ALJ cited "some minimal abnormalities, normal strength, motion, and sensation, and Plaintiff's testimony regarding her activities" without addressing the evidence that supported Dr. Kim's opinion. *Id.* at 15-16.

---

[4]The ALJ also includes a discussion of Dr. Kim's opinion regarding Plaintiff's psychological impairments. Tr. at 42-43. Plaintiff does not take issue with the ALJ's treatment of Dr. Kim's opinion on her psychological impairments and instead focuses on the treatment of Dr. Kim's opinion regarding her physical impairments. *See* ECF Dkt. #14 at 14-17. Accordingly, the Court only addresses the ALJ's treatment of Dr. Kim's opinion regarding Plaintiff's physical impairments.

Plaintiff also states that the ALJ failed to consider the factors of 20 C.F.R. § 404.1527(d)(2).[5] Regarding Dr. Chavinson's opinion, Plaintiff asserts that "the ALJ failed to properly evaluate the opinion and instead offered a satirical analysis and cherry picked the evidence" to support the conclusion that the opinion should be assigned little weight. ECF Dkt. #14 at 18. Plaintiff claims that the ALJ failed to properly analyze: her depression and anxiety with panic attacks; inability to deal with stress, people or supervisors; inability to rise from bed; and that she felt unreliable and totally unable to work. *Id.* at 19.

Defendant contends that the ALJ properly evaluated the medical opinions. ECF Dkt. #16 at 9. Specifically, Defendant states that the ALJ recognized Dr. Kim as Plaintiff's treating pain-management physician and that Dr. Kim had treated Plaintiff over a period of years within the bounds of his professional certifications and specialities. *Id.* at 10. Defendant then provides a summary of the ALJ's decision regarding Dr. Kim's opinion before stating that the objective medical evidence supported the ALJ's treatment of the opinion. *Id.* at 11-12. Continuing, Defendant states that Dr. Kim did not treat Plaintiff for psychological impairments and therefore it was proper for the ALJ to assign less than controlling weight to the opinion. *Id.* at 12. Defendant also notes that the ALJ: concluded that Dr. Kim had overstated Plaintiff's social limitations given the evidence showing that she reported contact with friends, attended church regularly, and went to the store; and indicated that Plaintiff could manage stressful situations as shown by her management of the aftermath of a house fire, including the insurance settlement process. *Id.* Additionally, Defendant states that the ALJ relied on Plaintiff's activities of daily living when assigning less than controlling weight to Dr. Kim's opinion. *Id.*

Regarding Dr. Chavinson's opinion, Defendant states that the ALJ recognized the treatment history, as well as Dr. Chavinson's certifications and areas of speciality. ECF Dkt. #16 at 13. Defendant then indicates that the ALJ stated that controlling weight would not be assigned to Dr. Chavinson's opinion because his progress notes did not support the extreme limitations that he

---

[5]The factors of 20 C.F.R. § 404.1527(d)(2) that Plaintiff cites are the: length of the treatment relationship; nature and extent of the treatment relationship; supportability of the opinion; and area of certification or specialty. ECF Dkt. #14 at 16-17.

opined. *Id.* Continuing, Defendant asserts that Dr. Chavinson's findings on mental health examinations repeatedly showed no remarkable or abnormal observations. *Id.* According to Defendant, the ALJ reasonably declined to allot more than a little weight to Dr. Chavinson's conclusory and extreme limitations. *Id.*

Plaintiff's arguments are without merit. The ALJ stated, in relevant part, the following when discussing the weight assigned to Dr. Kim's opinion:

> Dr. Kim has treated [Plaintiff] over a period of years and was reporting within the bounds of his professional certification and specialties. However, these advantages cannot overcome the weight of the evidentiary record. The record, as to [Plaintiff's] lumbar impairment, includes objective diagnostic imaging of a successful surgical procedure, with intact hardware, good spinal alignment, and a healing of the "minimal" retropulsion at the L1 vertebra, with no evidence for spinal stenosis or compressive pathology. The record, as to [Plaintiff's] shoulder impairment, includes objective diagnostic evidence of no more than "minimal" abnormalities, interpreted by [Plaintiff's] treating orthopedist as "normal." The record offered multiple and consistent findings on clinical examinations, including functional range of motion of the upper extremities, normal strength, sensation, reflexes of all extremities and normal gait, without consistent findings of shoulder impingement. [Plaintiff] drives, shops, raises her children, walks her dog, and attends to her household responsibilities. Dr. Kim's opinions, considered against the record as a whole, cannot be given controlling weight, as the limitations are not consistent, either with each other or with the whole of the evidence. His opinions suggest an improvement in [Plaintiff's] condition over time, not reflected in the record. As stated, the evidence of record does not support the specific degree of limitations suggested by Dr. Kim's physical opinions. However, the record does support the general categories of limitation suggested by Dr. Kim. To that end, exertional, postural, manipulative and environmental limitations have been included. On balance, some weight was accorded the physical opinions of Dr. Kim, but only to the extent described.
>
> Multiple assessments of Dr. Kim indicate that [Plaintiff] is unable to work because of persistent pain. These assessments appear at the end of each office visit; however, as described in the preceding paragraph, these assessments are not consistent with the overall record, or with Dr. Kim's three opinions of function. Leaving aside consideration of the application of SSR 96-5p, this inconsistency requires that little weight be accorded to these assessments.

Tr. at 41-42 (internal citations omitted). Here, the ALJ provided "good reasons" for discounting Dr. Kim's opinion. Specifically, when discounting Dr. Kim's opinion the ALJ cited: a successful surgical procedure; normal findings regarding Plaintiff's shoulder; consistent normal findings in Plaintiff's upper extremities; and Plaintiff's daily activities. *Id.* at 42. The ALJ explained why each of these findings supported the assignment of less than controlling weight to Dr. Kim's opinion. *Id.* Further, Plaintiff fails to explain how the ALJ violated 20 C.F.R. § 404.1527(d)(2) as the ALJ

-8-

explicitly mentioned the length, nature, and extent of the treatment relationship, Dr. Kim's certifications and specialty, and discussed the supportability of Dr. Kim's opinion. *Id*. at 41-42.

> Regarding Dr. Chavinson's opinion, the ALJ stated, in relevant part:
>
> Dr. Chavison has treated [Plaintiff] since January of 2015 and is reporting within the bounds of his professional certifications and specialty. However, these advantages cannot overcome the discordance that accrues when comparing his opinions to the treatment record. On January 12, 2015, Dr. Chavison noted that [Plaintiff] was moderately overweight, but otherwise displayed no remarkable or abnormal findings on her mental status examination. On March 9, 2015, his mental status findings were identical. On June 8, 2015, Dr. Chavison noted that [Plaintiff], in addition to being moderately overweight, had died [sic] her hair red, but again, displayed no remarkable or abnormal findings on her mental status examination. The whole of the evidentiary record is discussed in considerable detail during assessment of the psychological opinion of Dr. Kim, above, and although it will not be reiterated here, it is supportive of the limitations imposed in the [RFC]. However, using the treatment notes of Dr. Chavison alone, one would be forced to the conclusion that any overweight soul with a propensity for a new hairstyle would have work-preclusive limitations from a psychological standpoint. In addition, careful consideration of Dr. Chavison's treatment records indicate that despite the utter normality of his mental status examinations, he has persistently issued global assessment of function scores ranging between forty-two and forty-seven, each indicative of serious difficulties of social or occupational function. The concern over these is two-fold. First, it is difficult to imagine that a person with serious limitations would generate a completely normal mental status examination. Second, with the widespread distribution of the Diagnostic and Statistical Manual of Mental Illness - Fifth Edition, the use of these scores has been effectively discredited by their elimination from use. Because of the internal and external inconsistencies, and Dr. Chavison's use of an obsolete treatment modality, no controlling weight; rather, little weight was accorded to either of these opinions.

Tr. at 44 (internal citations omitted).[6] The ALJ provided good reasons for discounting Dr. Chavinson's opinion, namely, that his mental status findings were routinely normal. *Id.*

In support of her position, Plaintiff cites treatment notes, not from Dr. Chavison, in which Plaintiff reported that she suffered from anxiety, depression, and insomnia. ECF Dkt. #14 at 18 (citing Tr. at 1147). These statements do not weigh heavily against the ALJ's treatment of Dr. Chavison's opinion as they were subjective statements made by Plaintiff and were recorded in the "Narrative Summary" portion of the treatment notes. Tr. at 1147. Likewise, Plaintiff reported to Dr. Chavison that she was experiencing depression and anxiety attacks, as cited by Plaintiff, but these statements were subjective statements recorded in the "Narrative" portion of the treatment notes. *Id.* at 1190. Additionally, Plaintiff states that she was "perseverating about her disability

---

[6]The ALJ erroneous refers to Dr. Chavinson as "Dr. Chavison." Tr. at 43-44.

-9-

paperwork," but fails to explain how her her concern over her DIB claim contradicts the ALJ's treatment of Dr. Chavinson's opinion. *See* ECF Dkt. #14 at 19. The ALJ did not mischaracterize or "cherry-pick" information from the record, but instead relied on Dr. Chavinson's treatment notes rather than Plaintiff's reports of her impairments. *See* Tr. at 44. Further, the ALJ noted Plaintiff's preoccupation with obtaining disability benefits and cites a treatment note in which Plaintiff indicated that she was only seeking psychiatric care so that she could obtain DIB. *Id.* at 41 (citing *id.* at 940). This fact supports the ALJ's conclusion that Dr. Chavinson's opinion was not supported by his treatment notes or the record as a whole. Accordingly, the Court finds that the ALJ did not violate the treating physician rule.

### **B.** **Reviewing Physicians**

Next, Plaintiff asserts that the ALJ's assignment of considerable weight to the opinions of the reviewing physicians is reversible error. ECF Dkt. #14 at 19. Plaintiff claims that the ALJ recognized that the opinions of the reviewing physicians were offered at or near the outset of her claim, but then assigned significant weight to the opinions because the physicians had an opportunity to review Plaintiff's records. *Id.* Defendant contends that the ALJ did not err by assigning considerable/greater weight to the opinions of the reviewing physicians since the opinions were based on expert review of the medical evidence and the ALJ was entitled to rely on the opinions for support. ECF Dkt. #16 at 13.

Plaintiff's argument fails. When discussing the opinion of the reviewing physicians, the ALJ stated:

> Considerable weight was accorded the opinions of the state agency medical consultants, William Boltz, M.D. and Esberdado Villanueva, M.D., that [Plaintiff] could perform work at the light exertional level, could occasionally crawl, crouch, stoop, kneel, balance, climb ramps and stairs, but could never climb ladders, ropes or scaffolds and should avoid all exposure to workplace hazards. Drs. Bolz and Villanueva each had the opportunity to examine [Plaintiff's] record, to which each cited liberally in support of their conclusions and each is well versed in the terminology and analytical framework employed in the disposition of these claims. Moreover, despite that their opinions were rendered at the outset of this claim, these opinions remain reflective of the overall evidence of record, discussed in considerable detail in the analysis of Dr. Kim's psychological opinion, above. [Plaintiff's] left shoulder impairment, however, does bear consideration and accommodation, as indicated in the [RFC].

Tr. at 43. The ALJ recognized that the opinions from the reviewing physicians were rendered at the outset of the claim and noted that the opinions were reflective of the overall evidence or record. *Id.* Plaintiff fails to cite legal precedent indicating that the ALJ should not have considered the opinions of the reviewing physicians, especially considering the fact that the ALJ explicitly noted that the opinions were offered early in the claim process but were still reflective of Plaintiff's impairments based on the evidence of record. Accordingly, the Court finds that the ALJ properly assigned considerable weight to the opinions of the state reviewing physicians.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and dismisses the instant case in its entirety with prejudice.

Date: September 14, 2018     */s/George J. Limbert*
                              GEORGE J. LIMBERT
                              UNITED STATES MAGISTRATE JUDGE